■ DEBORAH A. KEIL, Appellant, v EDWIN A. KEIL, Respondent. [926 NYS2d 173]—

Spain, J. Appeal from a judgment of the Supreme Court (Lynch, J.), entered April 22, 2010 in Columbia County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in 1980 and had no children. Plaintiff commenced this divorce action in 2006; the parties thereafter agreed to a divorce in favor of defendant and the issues of equitable distribution and maintenance were heard at a bench trial. Given the length of the marriage and the contributions of each of the parties to the marriage and to the family business holdings, Supreme Court generally distributed the marital property on a 50/50 basis, awarded plaintiff nondurational maintenance and denied her request for counsel fees. Plaintiff now appeals.

Plaintiff first contends that Supreme Court failed to equitably distribute certain marital assets. A trial court's determination of equitable distribution is discretionary, based on the unique circumstances of each case, and such determinations will not be overturned on review unless they fail to properly account for the guiding statutory factors enumerated in Domestic Relations Law § 236 (B) (5) (d) (*see Fields v Fields*, 15 NY3d 158, 170 [2010]; *Mairs v Mairs*, 61 AD3d 1204, 1206 [2009]; *Altieri v Altieri*, 35 AD3d 1093, 1094 [2006]). This Court, however, has the "authority to conduct a broad review of any such award" (*Mairs v Mairs*, 61 AD3d at 1206; *see Majauskas v Majauskas*, 61 NY2d 481, 493-494 [1984]).

It is well settled that property obtained prior to marriage is generally separate property (*see* Domestic Relations Law § 236 [B] [1] [d] [1]; *Lewis v Lewis*, 6 AD3d 837, 838 [2004]; *Zanger v Zanger*, 1 AD3d 865, 866-867 [2003]). On the other hand, there is a presumption that property acquired during a marriage is marital property, and the burden of demonstrating that it is separate property is on the party making that assertion (*see* Domestic Relations Law § 236 [B] [1] [c]; *Fields v Fields*, 15 NY3d at 163; *Stahl v Stahl*, 80 AD3d 932, 932 [2011]; *Cease v Cease*, 72 AD3d 1450, 1451 [2010]). Moreover, "[c]ommingling separate property with marital property funds can result in separate

property becoming marital property" (*Armstrong v Armstrong*, 72 AD3d 1409, 1415 [2010]).

With respect to the marital home, the residence was acquired by defendant before the marriage and he never added plaintiff's name to the deed. As such, it is defendant's separate property (*see* Domestic Relations Law § 236 [B] [1] [d] [1]; *Albanese v Albanese*, 69 AD3d 1005, 1005 [2010]). " 'However, any appreciation in value of such separate property may be subject to distribution if there is a nexus between the titled spouse's efforts and the increase in value and those efforts were aided or facilitated by the nontitled spouse' " (*Albanese v Albanese*, 69 AD3d at 1006, quoting *Van Dyke v Van Dyke*, 273 AD2d 589, 592 [2000]). The court must be able to discern the value of such separate property as of the date of the marriage, and the value of the same at the end of the marriage, in order to make an accurate distributive award. Notably, the nontitled spouse bears the burden of establishing the marital component of separate property (*see id.*).

As to the value of the marital interest, the record reflects that defendant purchased the property in 1966 for $8,500. However, neither plaintiff nor defendant presented any expert testimony to demonstrate the value of the property at the start or at the end of the marriage. The parties testified to the value of improvements to the marital residence, including defendant's concession that those improvements cost a total of approximately $75,000 during the marriage. As Supreme Court awarded plaintiff $57,500 or the greater share of the $75,000 in improvements, we cannot agree with plaintiff that the court abused its discretion in making such award given the limited record evidence before it.

With respect to the marital furnishings, as no proof was offered by either side as to their value, we cannot say that Supreme Court abused its discretion in distributing the bulk of the marital furnishings to defendant in conjunction with its award to him of the marital residence (*see Butler v Butler*, 256 AD2d 1041, 1045-1046 [1998], *lv denied* 93 NY2d 805 [1999]).

We agree with plaintiff that Supreme Court erred in distributing as marital property the funds of a Smith Barney account (No. xxx-xxxxx-10) funded by her with premarital earnings. Plaintiff testified—without contradiction—that she acquired this particular account in her name prior to the parties' marriage and that she made no contributions or withdrawals during the marriage. Accordingly, this account, worth about $6,900 at the end of 2006, is plaintiff's separate property and not subject to equitable distribution (*see London v London*, 21 AD3d 602, 603 [2005]).

Regarding the farm property, evidence that property obtained during a marriage was a gift to only one spouse, if unrebutted, can satisfy the donee's burden to prove that it is separate property (*see Chiotti v Chiotti*, 12 AD3d 995, 996 [2004]; *Zanger v Zanger*, 1 AD3d at 866-867; *Allen v Allen*, 263 AD2d 691, 692 [1999]; *compare Daisernia v Daisernia*, 188 AD2d 944, 945 [1992]). However, evidence that a spouse's separate property was substantially improved through economic and/or noneconomic contributions of the other spouse can strip the property of its character as separate property (*see* Domestic Relations Law § 236 [B] [1] [d] [3]; *Dashnaw v Dashnaw*, 11 AD3d 732, 733 [2004]; *Seidman v Seidman*, 226 AD2d 1011, 1012 [1996]; *Verrilli v Verrilli*, 172 AD2d 990, 991 [1991], *lv denied* 78 NY2d 863 [1991]).

Here, defendant's father deeded the farm to defendant and his brother, as tenants in common, for no consideration shortly after the parties were married. In 1998, defendant purchased his brother's interest in the farm for $50,000, paying his brother a monthly sum, until defendant received a disability settlement of $27,000, which he used to pay the balance due. Further, during the marriage, the parties improved the farm by remodeling the main house and adding apartments to the property. The record supports the conclusion that these improvements were paid for with marital funds as well as with rents collected from the property, and defendant confirmed that plaintiff made noneconomic contributions to the improvement and development of the farm. Based on the foregoing, Supreme Court found the farm to be separate property, however, due to the use of marital funds to purchase a portion of the brother's interest and to improve the property, the court found 15% of the farm to be marital property.

On our review of the record, keeping in mind plaintiff's economic contributions towards the purchase of half of the farm, as well as her economic and noneconomic contributions towards improving the property, we conclude that 50% of the farm was marital property, of which plaintiff is entitled to one half (*compare Dashnaw v Dashnaw*, 11 AD3d at 733; *Seidman v Seidman*, 226 AD2d at 1012). Accordingly, based on the uncontradicted appraisal of the farm completed by defendant's expert, plaintiff's distributive award for the farm should be increased to $122,500, or 25% of its full value ($490,000) less the $27,000 of separate property (disability proceeds) used by defendant to pay the balance due for his brother's interest or a total award of $95,500 (*see* Domestic Relations Law § 236 [B] [1] [d] [2], [3]; *compare Carr v Carr*, 291 AD2d 672, 676-677 [2002]; *Verrilli v Verrilli*, 172 AD2d at 991).

Next, we also find merit to plaintiff's claim that Supreme Court erred in reducing her expert's assessment of the fair market value of Keil's Pools. Plaintiff argues that because her expert had already factored into his conclusions a reduced multiple accounting for, among other things, defendant's key role in the business, there was no basis upon which the court could further reduce the value of the business on that same ground.

" '[T]he valuation of [a] business for equitable distribution purposes [is] an exercise [properly] within Supreme Court's fact-finding power to be guided by expert testimony' " (*Nissen v Nissen*, 17 AD3d 819, 821 [2005], quoting *Hiatt v Tremper-Hiatt*, 6 AD3d 1014, 1015 [2004]; *see Sieger v Sieger*, 51 AD3d 1004, 1004 [2008], *appeal dismissed* 14 NY3d 750 [2010], *lv denied* 14 NY3d 711 [2010]). Furthermore, "[w]here the determination as to the value of a business is within the range of the testimony presented, it will not be disturbed on appeal if it rests primarily on the credibility of expert witnesses and their valuation techniques" (*Sieger v Sieger*, 51 AD3d at 1004; *see Tayar v Tayar*, 250 AD2d 757, 757-758 [1998]). Here, plaintiff's expert testified regarding different valuation methods, arriving at a value for the business of $437,000 as of April 12, 2006, the commencement date. Significantly, defendant did not present any expert testimony as to the value of the business. Supreme Court accepted the methodologies, findings, conclusions and the value determined by plaintiff's expert, but further reduced that value by 20% due to the fact that the business is heavily tied to defendant who was 67 years old at the time of the trial and has health concerns, concluding that his ability to continue to run the business is "uncertain." Given that plaintiff's expert had already reduced the value of Keil's Pools based on defendant's key role in the business, and additionally factored in the downturn in the economy after the date of commencement, the court, in our view, erred in further reducing the value of the business (*compare Nissen v Nissen*, 17 AD3d at 821; *Hiatt v Tremper-Hiatt*, 6 AD3d at 1015; *Tayar v Tayar*, 250 AD2d at 757-758; *Beckerman v Beckerman*, 126 AD2d 591, 592 [1987]). The court gave no explanation as to how defendant's age or health negatively impacted the market value of the business as of April 2006. Further, there is no medical proof in this record that defendant's reported ailments would limit his ability to continue to run the business for the long haul or to sell it. Accordingly, plaintiff's distributive award for her share of Keil's Pools should be increased to $218,500, or 50% of $437,000.

We next reject plaintiff's assertion that Supreme Court erred in awarding her nondurational maintenance in the amount of

$1,000 per month. "The amount and duration of maintenance are generally left to the trial court's discretion as long as the court considers the statutory factors and provides a basis for its conclusion" (*Blay v Blay*, 51 AD3d 1189, 1191-1192 [2008] [citations omitted]; *see* Domestic Relations Law § 236 [B] [6] [a]; *Armstrong v Armstrong*, 72 AD3d 1409, 1415 [2010], *supra*; *Burtchaell v Burtchaell*, 42 AD3d 783, 784-785 [2007]), and Supreme Court's judgment will not be disturbed on appeal absent an abuse of discretion (*see Blay v Blay*, 51 AD3d at 1191-1192). Here, Supreme Court noted the fact that plaintiff received a substantial distribution of marital property including an award for her share of Keil's Pools—amounts which have been increased herein—and that plaintiff was awarded her share of defendant's pension benefits. Given the court's consideration of the statutory factors in its analysis and its stated basis for the award, we cannot conclude that $1,000 per month in nondurational maintenance was an abuse of discretion (*see* Domestic Relations Law § 236 [B] [6] [a]; *Blay v Blay*, 51 AD3d at 1191-1192).

Finally, plaintiff contends that Supreme Court erred in denying her request for counsel fees. Supreme Court's decision will not be found to be "an abuse of discretion . . . without a showing that [the party seeking counsel fees] was in need" (*DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881 [1987]; *see Howard v Howard*, 45 AD3d 944, 945-946 [2007]; *Redgrave v Redgrave*, 22 AD3d 913, 914-915 [2005]). In light of the generous equitable distribution and maintenance awards to plaintiff, we discern no abuse of discretion in denying this request (*compare Armstrong v Armstrong*, 72 AD3d at 1416; *Webber v Webber*, 30 AD3d 723, 724 [2006]).

We have considered plaintiff's remaining contentions and find them unpersuasive.

Peters, J.P., Rose and Stein, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as (1) ordered equitable distribution of plaintiff's Smith Barney account No. xxx-xxxxx-10, (2) awarded plaintiff 15% of the value of the farm, and (3) reduced the value of the family business by 20%; the Smith Barney account is plaintiff's separate property, plaintiff is entitled to 25% of the value of the farm or $122,500 subject to a credit to defendant of $27,000, and plaintiff is entitled to 50% of the expert's appraised value of the business or $218,500; and, as so modified, affirmed.